Mary **GILBERTSON**

v.

Scott **McALISTER** et al.

Civ. No. H–74–19.

United States District Court, D. Connecticut.

Oct. 17, 1974.

Bruce C. Mayor, Schweitzer & Mayor, Hartford, Conn., for plaintiff.

Albert G. Murphy, Hartford, Conn., for defendants.

**1108**

RULING ON MOTION FOR PARTIAL
SUMMARY JUDGMENT

ZAMPANO, District Judge.

On November 2, 1973, Mary Gilbertson, a tenured English teacher at Weaver High School in Hartford, received a letter from the Superintendent of Schools, Robert M. Kelly, suspending her immediately without pay and discharging her from employment effective February 4, 1974. The Superintendent's letter set forth six reasons for this action,[1]

1. The Superintendent's letter stated the grounds of dismissal as follows:

1. Insubordination to Mr. Stewart Street, principal of Weaver High School. On two separate occasions, you refused his order that you report to his office, even though on the second occasion he told you that once you arrived at his office he would explain the nature of the visit and then allow you to have a witness with you, if you wished. Your insistence that a witness must be present, even before he told you why you were being called to his office, is completely unreasonable and unsupportable. If the principal were required to follow this procedure whenever he wanted to talk to a member of his staff, it would be next to impossible for him to run the school. Further, once you arrived at his office, if he then had refused to allow you to have a Union representative present after he had explained the matter under consideration, you could have aggrieved him through the procedures noted in the Agreement between the Board and the Federation.

2. Participating in the distribution of flyers to staff and students in violation of Board of Education policy (Administrative Manual, 2080–1). This policy states that, "neither the facilities, the personnel, nor the students may be employed in any manner for advertising, distribution of advertising materials or otherwise promoting the interests of any commercial or other non-school agency or organization of a political, partisan, controversial, or sectarian nature." The Revolutionary Youth Movement (RYM) is an organization which falls within the meaning of a "political, partisan, controversial" non-school organization. You are known to have distributed literature both inside and outside the Weaver building.

3. Distributing materials which contain false and inflammatory accusations not only against your school principal, Stewart Street but also regarding the school program. The distribution of this material which you yourself characterized as, "It's awful, but it's true", caused great concern to students at Weaver High School. In your second release, Mr. Street is accused of "having used military riot control gas against demonstrating students" while principal of Camden High School in December 1972. Any kind of factual check at all would have shown that

Mr. Street left his position in Camden prior to September 1972 and, in fact, was not even in the state of New Jersey in December of 1972. Mr. Street never had military control gas or any other kind of gas used against any student.

The distributed materials also contained false and politically partisan information about a number of school programs and activities. Certainly they do not in any way give a balanced presentation of issues and, as such, reveal an inability or unwillingness on your part to encourage real free speech which is dependent on true facts, rather than biased propaganda.

4. Use of students to promote your own partisan interests, in the hope that they could sway teachers to support your candidacy as Building Representative of the Hartford Federation of Teachers. Students brought into their classes the flyers which you helped to distribute, and questioned teachers on how they were going to vote. To use our students in such an overtly selfish manner is not only a violation of the Board policy cited above, but also opens to question your motivations in remaining as a teacher in our system.

5. Distributing flyers which contain false and inflammatory accusations against city officials. The city police were falsely accused of "sitting outside their [teacher supporters of Gilbertson] homes", "stalking the halls of Weaver High School on the eve of the Union election," "intimidating student and teacher supporters of Gilbertson," as well as other violations of people's civil rights. None of these charges are true and the inflammatory language leads to the conclusion that the material distributed was for political and partisan reasons. Again, students were used in violation of stated Board policy.

6. Failure to heed (as an employee of the Board of Education) past warnings from me not to allow your private beliefs to interfere with your responsibilities of adhering to stated Board policy. You may recall that just one year ago, I wrote you regarding this very matter. On a number of past occasions, you felt that it was more important to espouse your personal views than to be in class with your students. Thus, your recent activity as regards the distribution of materials at Weaver is but a further example of

in effect, charging that Ms. Gilbertson had engaged in misconduct while a teacher.[2] Pursuant to the Teachers' Tenure Act, Hartford City Charter, App. 8 § 9, Ms. Gilbertson appealed the Superintendent's decision to the Hartford Board of Education, and hearings were held December 13, 14, 15, and 17, 1973. By a vote of six to two, the school Board affirmed the Superintendent's decision, and communicated its findings to Ms. Gilbertson as follows:

> The Board believes that the Superintendent's charge of your *misconduct* (one of the three grounds in the City Charter, Appendix 8, Section 8 under which a teacher may be dismissed) was proven. (emphasis original)

Soon thereafter, Ms. Gilbertson commenced the instant action, pursuant to 42 U.S.C. § 1983, alleging that the decision to discharge her deprived her of federally protected rights. The first count of her lengthy complaint contends that, acting in their official capacities, the elected members of the Hartford Board of Education deprived her of due process of law by conducting a discharge hearing constitutionally deficient in several respects. In the second count, the plaintiff claims that certain Board members and other school officials acted wilfully and wantonly to deprive her of her constitutional rights to freedom of speech, due process of law, and equal protection of laws. To redress these injuries, plaintiff seeks an order reinstating her at Weaver High School and awarding her lost wages together with monetary damages and other relief.

The plaintiff now moves for partial summary judgment on Count One of the complaint, pursuant to Rule 56, F.R.Civ. P. In an attempt to avoid any issue as to a material fact, the plaintiff, for the purposes of the motion, submits certain stipulations of fact and the transcript of the proceedings before the Board. In addition, she presses neither her contention that her discharge was made in retaliation for her exercise of First Amendment rights nor her claim that in fact the members of the Board were biased and prejudiced against her. Focusing on the appeal proceeding before the Hartford Board of Education, she rests her motion on three specific deprivations of due process: (1) the Board was not an impartial decision-maker as a matter of law; (2) the Board failed to submit written or oral findings sufficient to permit judicial review; and (3) the Board's decision was arbitrary with not a scintilla of support in the record.

At the outset it is noted that the plaintiff, as a tenured teacher whose employment was terminated by the Board of Education, was entitled to notice and a hearing that fairly meets the concepts of fundamental due process. Cf. Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Slowchower v. Board of Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952). Although the plaintiff concedes, as she must for the purposes of the motion, that she was afforded a full adversary

---

allowing your interests in political causes to supercede your concern for the welfare of your students and the educational process.

2. Misconduct is a ground for dismissal under the Teachers' Tenure Act, Hartford City Charter, App. 8 § 8, which reads:
Teachers may be dismissed at any time:
(1) For inefficiency or misconduct;
(2) By reason of the position to which they were appointed being abolished, provided there is no other position to which they may be appointed if qualified, and provided seniority in service in the day schools of the Town and City of Hartford shall be the determining factor in such dismissal.
No teacher shall be dismissed or suspended except upon written notice from the superintendent of schools, the notice to state the reasons for such action. Notice of dismissal shall not take effect in less than three months. In cases where serious misconduct is charged a teacher may be suspended from duty immediately.

series of hearings before the Board, she nevertheless argues that there were grave deficiencies in procedure and clear violations of her constitutional rights.

Relying on a rather complex chain of reasoning, the plaintiff first contends that the Board was not a neutral and impartial decision-maker. See e. g., Goldberg v. Kelly, 397 U.S. 254, 271, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Winnick v. Manning, 460 F.2d 545, 548 (2 Cir. 1972); Wasson v. Trowbridge, 382 F.2d 807, 813 (2 Cir. 1967). She points out that, prior to her suspension and discharge, the Court of Common Council of the City of Hartford passed a resolution that the Board of Education investigate the disruptive behavior of students at the High School in which the plaintiff was a teacher, and specifically called the Board's attention to "a teacher . . . who has a long history of participation in disruptive influences." Presumably, the teacher referred to in the resolution was the plaintiff. The plaintiff then asserts a series of relationships which exist between the Board and the Council, including "funding" and "political interplay." From this she argues that the Board "was jumping to the tune" orchestrated by the Council to have her fired. Therefore, she concludes, "it is inconceivable" that the Board could be a fair and impartial tribunal.

■ While it is desirable that an administrative hearing be clothed "not only with every element of fairness, but with the very appearance of complete fairness," Amos Treat & Co. v. SEC, 113 U.S.App.D.C. 100, 306 F.2d 260, 267 (1962), the Court cannot conclude from plaintiff's broad, unsubstantiated assertions that, as a matter of law, the Board as the deciding tribunal had prejudged the merits of her case, and was therefore incapable of fair treatment and rational decision. Moreover, absent a showing of actual, rather than potential, bias, the Board of Education was the properly constituted body to investigate and ultimately rule upon the plaintiff's competence as a teacher. Simard v.

Board of Education of Town of Groton, 473 F.2d 988, 992–993 (2 Cir. 1973); cf. Winnick v. Manning, supra at 548.

■ Plaintiff next maintains that the Board's failure to supply her with detailed findings and reasons for her discharge deprived her of due process. Even assuming that the Board's ruling "that the Superintendent's charge of your misconduct . . . was proven" was insufficient to apprise her fully of the reasons for the termination, plaintiff has failed to demonstrate that the omission has prejudiced her in any way. At most, on the present record, the error is harmless. Cf. Simard v. Board of Education of Town of Groton, supra at 994. Indeed, plaintiff concedes that the absence of findings is only a "technical error" and that she "cannot ultimately get her job back just because the Board failed to render a finding." Reply Brief, p. 2. While plaintiff does argue that the lack of a finding will preclude full judicial review, she provides no factual support for this conclusory statement. The plaintiff had adequate advance knowledge of the charges pending against her and was accorded a meaningful hearing. Consequently, the absence of formal findings in a written opinion would not violate due process. See Ahern v. Board of Education of Sch. Dist. of Grand Island, 456 F.2d 399, 403 (8 Cir. 1972).

■ Finally, plaintiff contends that not a shred of evidence supports the Board's decision because her discharge was based not on misconduct but rather on her free speech activities. See Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). However, the defendants vigorously dispute this claim. Under these circumstances, genuine issues of fact are present and summary judgment is therefore inappropriate. Perry v. Sindermann, supra 408 U.S. at 598, 92 S.Ct. 2694; cf. Blanton v. State University of New York, 489 F.2d 377, 383 (2 Cir. 1973).

Accordingly, the plaintiff's motion for partial summary judgment is denied.