(643 P.2d 1125)

No. 53,298

Ross Crane, *Appellant,* v. Mitchell County U.S.D. #273, *Appellee.*

Opinion filed April 15, 1982.

*Richard E. Dietz,* of Osborne, for appellant.

*Harry W. Gantenbein,* of Gantenbein & Frasier, of Beloit, and *Fred W. Rausch, Jr.,* of Topeka, for appellee.

Before ABBOTT, P.J., SWINEHART & MEYER, JJ.

MEYER, J.: This is an action for damages resulting from an alleged wrongful midyear termination of appellant's teaching contract.

Ross Crane (appellant) was employed by Unified School District No. 273 as a vocational agriculture instructor and F.F.A. advisor, pursuant to a written contract, dated August 14, 1979, for a period of eleven months; appellant was a nontenured teacher.

Appellee school board (board) held a special meeting on November 5, 1979, and by resolution, the board terminated appellant's contract based upon the six specified reasons below described, to-wit:

(a) In disciplining a ninth grader in class, appellant turned suddenly and flipped the student in his desk chair over backwards onto a tiled floor, hurting the student's shoulder.

(b) Prior to class taking up, appellant disciplined a tenth grade student who was on crutches by kicking him in the foot with such force that it caused him to lose his balance.

(c) Appellant lost his temper in a classroom and hit an eleventh grade student in the chest with his fist, causing pain and bruising, knowing at the time that the student had a heart condition.

(d) As a result of appellant's discharging a 12-gauge shotgun at his home on Halloween (October 31, 1979), two students of the involved school district were struck by shotgun pellets, one of which said pellets had lodged in the base of the skull of one of the students. Appellant was charged in the District Court of Mitchell County, Kansas, with unlawfully, feloniously, and willfully applying force to a student at Beloit High School, with the intent to injure said student, which was done with a deadly weapon.

(e) As a result of the appellant's inappropriate conduct, three students withdrew from his class and several others desired to withdraw.

(f) Acts coupled in (a) through (d) above caused loss of parent, student, teacher and school board respect for appellant, making it impossible for appellant to function effectively as a teacher of the involved school district.

By separate resolution at the special meeting on November 5, 1979, the board set a hearing for November 12, 1979, to decide whether said termination of employment was to be with or without pay.

On November 6, 1979, notice of the board's decision to terminate appellant's employment and notice of hearing to decide whether such termination was to be with or without pay, was mailed by certified mail. The notice of termination set forth the reasons for termination. It was received by appellant on November 7, 1979.

On November 12, 1979, the board held a hearing to determine if appellant's contract should be terminated with or without pay, and the board then voted unanimously to terminate appellant's contract without pay as of November 12, 1979. Although appellant received notice of this hearing, he did not appear.

On November 17, 1979, the board received a notice that appellant requested a due process hearing pursuant to the provisions of K.S.A. 72-5436 *et seq.* On November 21, 1979, the appellant and board advised each other of their respective hearing committee appointees. On January 2, 1980, the parties agreed to the setting of a prehearing conference on January 30, 1980, and on that date a prehearing conference was held, at which time a hearing date of April 22, 1980, was agree upon.

A due process hearing was held on April 22, 1980, before a special three-person hearing committee. This committee delayed transmitting its findings of fact and recommendations on resolution of the issues to the board until such a time as both parties had submitted briefs to the committee. The board prepared its brief; appellant has never submitted his brief to the committee.

The hearing committee submitted its findings on May 8, 1981, and recommended actions to the board, even though appellant had never complied with the committee's request for a brief. The majority of the hearing committee recommended an affirmance of the board's decision to terminate appellant without pay as of November 12, 1979.

On December 17, 1980, prior to the hearing committee's issuance of its recommendations, but some eight months after the hearing, appellant filed his petition in the Mitchell County District Court, praying for reinstatement, back salary and damages, under the theory that he was deprived of a property right without

due process of law. On January 16, 1981, the board filed a motion to strike appellant's petition; this motion was treated as a motion to dismiss by the judge.

On April 24, 1981, the district judge, Honorable Richard W. Wahl, after considering briefs submitted by the parties, dismissed the petition filed by the appellant. The court ruled as a matter of law that appellant could not file an action for alleged violation of his constitutional right to due process. The court held that the appellant, as a nontenured teacher, was entitled to no hearing at all (either before- or after-the-fact), unless the appellant claimed violation of a constitutionally-protected right. The court determined that appellant's claim of wrongful termination was based upon his exercise of a constitutionally-protected right and should therefore have been pursued under K.S.A. 72-5446. The court held that because appellant did not pursue the action under K.S.A. 72-5446, the action could not be filed because appellant had failed to first exhaust his available administrative remedies. From this dismissal, appellant appeals.

Appellant's major contention is that he was deprived of due process of law when his teaching contract was terminated in midyear because he was afforded no hearing prior to the making of the decision to terminate him.

The due process clause of the Fourteenth Amendment to the United States Constitution provides:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law. . . ."

The United States Supreme Court has interpreted this provision as protecting a wide variety of interests. In *Board of Regents v. Roth,* 408 U.S. 564, 33 L.Ed.2d 548, 92 S.Ct. 2701 (1972), the high court stated:

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests—property interests—may take many forms." (p. 576)

K.S.A. 72-5438 mandates that a due process hearing be held before a final decision is made not to renew, or to immediately terminate, a teacher's contract. However, K.S.A. 72-5445 expressly limits the applicability of 72-5438 to teachers with at least two years' consecutive service with the same school district. As to a simple decision not to renew a nontenured teacher's contract,

made at the end of the school year, the courts have held that no hearing need be provided, neither before the decision not to renew, nor after it. This is because an untenured teacher has no property right in the renewal of his contract which would entitle him to any hearing. *Gragg v. U.S.D. No. 287*, 6 Kan. App. 2d 152, 627 P.2d 335 (1981).

On the other hand, a midyear termination of a nontenured teacher has been treated differently than an end-of-year decision not to renew. The decision of the Kansas Supreme Court in *Wertz v. Southern Cloud Unified School District*, 218 Kan. 25, 542 P.2d 339 (1975), makes it clear that a midyear termination of a teaching contract, even where a nontenured teacher is involved, does affect a constitutionally protected interest. The court held:

"The stigma which attaches to a mid-year dismissal of a nontenured teacher for incompetence is sufficiently injurious to call for a hearing and, even though a hearing is not afforded such teacher by state statute, constitutional requirements of due process operate to overcome the lack of statutory right. [Citation omitted.]" 218 Kan. at 29.

The *Wertz* decision also recognizes a property interest which is affected by the midyear termination of a nontenured teacher.

"A teacher who is dismissed without pay during the term of his contract has an interest in continued employment which is safeguarded by due process. (*Wieman v. Updegraff*, 344 U.S. 183, 97 L.Ed. 216, 73 S.Ct. 215 [1952].)" 218 Kan. at 29-30.

The *Wertz* decision therefore mandated that a nontenured teacher must generally be accorded a due process hearing prior to a midyear termination of his contract. Importantly, however, the court in its opinion also recognized that certain exceptional conditions may exist which would make an immediate termination necessary. In such cases, a due process hearing "after-the-fact" would be sufficient protection for the interests of the teacher. As stated by the court:

"Under extreme circumstances involving a serious disruption of the school educational processes it may be imperative that a teacher be relieved of teaching duties immediately but in fairness to a teacher a hearing should ordinarily be afforded before a decision to terminate without pay is made." 218 Kan. at 31.

It appears that the board believed appellant's immediate suspension from teaching was necessary. From the list of reasons given for appellant's termination, it is hard to say that the board was wrong in its belief. Unlike the situation in the *Wertz* case, where the discipline problems occurring at the school were

attributable more to certain students than to lack of discipline in Mr. Wertz's class alone, here the record shows repeated incidents, both at and away from the school, of misconduct on appellant's part. Also, the court in *Wertz* did not consider the troubles afflicting that school to be "of such a nature as to be considered a sudden serious disruption of the educational processes of the school." 218 Kan. at 32. Here, the situation is different; appellant's own conduct was the basis for the general loss of confidence in his abilities as an effective teacher. The conclusion that his immediate suspension from duty was required to avoid serious disruption of the school's educational process appears reasonable to this court. For this reason, appellant was not, under the holding in *Wertz,* entitled to a due process hearing prior to receiving notice of termination of his duties.

There is a great difference, however, between a suspension from teaching duties pending the outcome of a due process hearing and the termination of pay under the contract without a due process hearing. The first is lawful in "extreme circumstances"; the second is a violation of constitutional rights in any setting.

*Wertz* is recognized by other courts as standing for the proposition that a teacher must be afforded a full due process hearing before an impartial tribunal prior to midyear termination of his pay. The extreme circumstances which allow for immediate suspension of teaching duties do not also allow for a suspension of pay without first according the teacher a full due process hearing. See *Bogart v. Unified Sch. Dist. No. 298 of Lincoln Cty.,* 432 F. Supp. 895 (D. Kan. 1977).

With the notice of termination, appellant also received notification of a hearing on the issue of whether his termination would be with or without pay. This hearing was held a scant five days after appellant's receipt of the notification, and the tribunal before which it was held was the school board, the very body that had voted to terminate appellant's contract only one week earlier. This hearing is not of the type envisioned by the court in *Wertz,* nor does it measure up to the definition of a hearing before an impartial tribunal, as discussed in the *Bogart* opinion.

"Due process requires the hearing to which plaintiff is entitled, be before an impartial tribunal. There are at least two component factors which must be considered in determining impartiality. First, the individual decision makers must not have exhibited bias as to the factual questions to be decided at hearing;

and second, the hearing must occur before dismissal except in unusual circumstances. . . . [E]vidence of actual bias which offends due process consists of 'statements on the merits by those who must make factual determinations on contested fact issues. . . .' *Staton v. Mayes,* 552 F.2d 908, at page 914 (10th Cir. 1977)." *Bogart v. Unified Sch. Dist. No. 298 of Lincoln Cty.,* 432 F. Supp. at 903-4.

The *Bogart* opinion also contains an excellent summation of the law of due process:

"[P]rocedural due process requires at least notice, a hearing, and a method of decision which does not offend the concept of fundamental fairness. The extent and nature of the hearing may vary from situation to situation, depending upon all of the facts and circumstances. Substantive due process requires the decision-maker to be presented with and to consider a minimal amount of credible evidence sufficient to support a legal basis for its ultimate action. Again, what constitutes sufficient evidence may vary from situation to situation, although it need be only enough to prevent the decision from being totally arbitrary and capricious. . . ." 432 F. Supp. at 905-6.

Appellant did not appear at the hearing held on November 12, 1979. Nothing in the record indicates that the board heard any evidence pertaining to appellant's termination at that time; it appears that the board simply voted to terminate appellant, without pay, as of the date of that hearing. That hearing would not have satisfied the needs of due process even if appellant had appeared and defended because the board lacked the impartiality required by *Bogart.* Therefore, appellant did not waive his right to a due process hearing by his failure to attend.

This brings up the question whether appellant waived his constitutional right to due process when he requested and participated in a hearing before an admittedly impartial tribunal. Appellant appeared at this after-the-fact hearing and defended on the merits. Before the hearing committee had issued its findings and recommendations, though, appellant filed this independent action claiming that he had been denied due process in his termination. It appears that appellant also ceased to cooperate with the hearing committee at that time.

In the *Wertz* case the court ruled that Mr. Wertz did not waive his right to a due process hearing prior to termination when he refused to take part in an after-the-fact hearing which was offered to him. The situation here is only slightly different. Appellant had not been granted the impartial hearing to which he was entitled before his salary was terminated. He was offered an after-the-fact hearing. He accepted the offer and the hearing was conducted, all

procedures being in substantial conformity with the Teachers' Due Process Act. Because any minor departures from the prescriptions of the act were merely technical in nature and not prejudicial to appellant's rights, he has waived objection to such matters of mere form by his appearing and defending at the hearing. *Schulze v. Board of Education,* 221 Kan. 351, Syl. ¶ 2, 559 P.2d 367 (1977).

The appellant's petition did not attack the lawfulness of the procedure per se, but instead asserted that an after-the-fact hearing, however properly conducted, was no substitute for a full due process hearing before an impartial body *prior to the termination of his pay.* Appellant did not pursue this hearing procedure to a full conclusion. However, appellant's claim of denial of due process would be meritorious even if he had not raised it until after the after-the-fact proceedings were concluded. He should have been paid from November 12, 1979, until the final decision of the board, based on the hearing committee's report, was announced. That he asserted this right prior to conclusion of the after-the-fact proceedings is not a controlling factor.

This is not an appeal from the ruling of the board, because the board has never issued a final decision. What appellant asserts is that his pay was terminated before this final decision was reached. The issue of due process of law is not one which the board or hearing committee is empowered to address. It does not seem fair to hold that a teacher has waived his due process rights by partial adjudication before a tribunal lacking the authority to decide if those rights have been infringed. This case is similar to *Wertz:* appellant in the instant case refused to continue taking part in the after-the-fact proceedings after some involvement therein; given that these proceedings could not protect his due process rights, his partial involvement should not be treated any differently than Mr. Wertz's total refusal to participate.

We conclude that appellant did not waive his right to a full due process hearing prior to termination of his pay by either his original participation in, or his subsequent withdrawal from, the after-the-fact proceedings, for the reason that these proceedings were not designed or empowered to address whether constitutional rights had been violated.

The final issue is whether the district court was correct in dismissing appellant's petition. This dismissal was predicated on

the trial court's opinion that appellant had failed to exhaust his administrative remedies prior to filing his action in the district court.

The trial court stated that appellant's remedy for violation of a constitutional right in his termination was under K.S.A. 72-5446. That section involves the procedure to be employed when a teacher asserts that his termination is *due to* his lawful exercise of a constitutionally-protected right; it does not speak to cases where the teacher merely claims that *the procedure used* to terminate his contract denied his constitutional right to due process. Appellant has never claimed that he was dismissed because of his exercise of constitutionally-protected rights, only that he was not accorded due process of law in the termination proceedings. For this reason, K.S.A. 72-5446 is not applicable in this case.

We conclude that the dismissal of appellant's petition was unwarranted. Appellant's due process rights had been violated; he had not been paid under his contract after November 12, 1979, even though no impartial hearing had then been granted to him. The action he filed was designed and intended to assert and protect his due process rights. Appellant was asserting a valid claim for damages resulting from a denial of due process. This claim could not be resolved by the hearing committee or the board; their only function was to determine whether adequate grounds existed to terminate appellant. Even if such grounds were found to exist, appellant was entitled to be paid until such time as a final decision to terminate was made, based upon the findings of the impartial tribunal. Appellant thus had no administrative remedy, and his petition should not have been dismissed on the incorrect notion that he had failed to exhaust his administrative remedies.

To summarize, under the circumstances, the board had the power to suspend appellant's duties without a hearing. Appellant was, however, entitled to a full due process hearing before his salary was suspended; he was not granted one. The hearing at which it was decided to terminate appellant's pay did not comply with due process of law. Appellant's failure to attend this hearing should therefore not be considered a waiver of his due process rights. The after-the-fact hearing, though conducted properly under the law, was no substitute for a full due process hearing conducted prior to the termination of appellant's pay; that pro-

ceeding was not able to protect appellant's due process rights. Thus, appellant should not be held to have waived those rights by his limited involvement in that proceeding. The lawsuit filed by appellant asserted a valid claim for damages based on an unlawful deprivation of constitutional rights. Appellant had no administrative remedy available to redress his injuries. Therefore, the court improperly dismissed appellant's petition.

We remand this case to the Mitchell County District Court with directions to reinstate appellant's petition, to allow for responsive pleading by the board, to allow for pretrial discovery and other procedures, and to allow the case to come on for trial, where the court shall apply the law as reflected in the opinion of this court.

Reversed and remanded with directions.

ABBOTT, J., dissenting: I would affirm the trial court's dismissal of appellant's petition. The prudent course for the school board obviously would have been for it to have suspended appellant with pay, to have held a due process hearing, and then to have taken appropriate action.

The majority agrees, however, that the conduct of the appellant was extraordinary, and the school board was justified in dismissing appellant without such a hearing. The majority then holds that the appellant was not afforded a due process hearing before his wages were terminated and that he did not waive his right to such a hearing. I disagree. The school board offered appellant an opportunity to appear and be heard before his wages were terminated, but appellant chose not to appear. There is no established time period between notice and hearing in order to afford due process. The appellant did not request additional time, nor does he give a valid reason for not requesting additional time or even suggest why additional time was necessary. As I understand applicable law, the burden is on appellant to show a lack of due process. Thus, appellant had an opportunity to participate in a due process hearing but deliberately chose not to do so.

The majority also holds that the school board could not be an impartial tribunal. By the test adopted by the majority, the school board was an impartial tribunal. The school board had *not* announced its views or exhibited bias as to "the factual questions to be decided at [the] hearing." *Bogart v. Unified Sch. Dist. No. 298 of Lincoln Cty.,* 432 F. Supp. 895, 904 (D. Kan. 1977). The school board had determined that appellant's conduct was so disruptive

to the educational process that it would terminate his employment contract and then decide whether it would be with or without pay.

The fact that a school board also has some investigative and prosecutive functions in a hearing of this nature does not ordinarily amount to a denial of due process. *Griggs v. Board of Trustees,* 61 Cal.2d 93, 37 Cal. Rptr. 194, 389 P.2d 722 (1964).

Obviously a school board has some knowledge of the facts and has reached some conclusion before a hearing is ordered. *Morris v. School District,* 139 Kan. 268, 279, 30 P.2d 1094 (1934); *Million v. Board of Education,* 181 Kan. 230, 237, 310 P.2d 917 (1957). That fact standing alone does not indicate bias, which would require disqualification. All that is required is that an appellant be given an opportunity to be heard and present witnesses, and to examine the evidence to test its accuracy. It is the school board's function to make the ultimate decision, subject only to the requirements of due process of law. The school board normally will have knowledge of the exact reason why it desires to terminate or nonrenew a teacher. Due process requires that the board keep an open mind, that it not become an advocate, and that it give the teacher a fair opportunity to present his or her side of the story and thus prevent the board from acting on erroneous or incomplete information. The trial court did not find the school board to be biased or to be an impartial tribunal, and I am unwilling and unable to do so based on the record before us.

The appellant himself requested that the school board proceed under K.S.A. 72-5436 *et seq.;* the school board agreed to do so and the appellant participated. The apparent reason for the lack of a decision by the school board before this action was filed was that appellant requested time to file a brief, but he failed to do so. As I view the trial judge's decision, he is saying the appellant requested that an inapplicable statutory procedure be followed, to which the school board agreed, and that appellant must follow that procedure to a conclusion if he desires to appeal. I see nothing wrong with that holding.

If, in fact, appellant was denied due process, his loss of pay could not exceed that necessary to complete his contract of employment for the school year in which he was terminated.

I would affirm.