No. 53,298

Ross Crane, *Appellant,* v. Mitchell County U.S.D. No. 273, *Appellee.*

(652 P.2d 205)

Opinion filed October 22, 1982.

*Richard E. Dietz,* of Osborne, argued the cause and was on the brief for the appellant.

*Fred W. Rausch, Jr.,* of Topeka, argued the cause, and *Harry W. Gantenbein,* of Gantenbein & Frasier, of Beloit, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This case is before the court on a Petition for Review of the decision of the Court of Appeals found at 7 Kan. App. 2d 430, 643 P.2d 1125 (1982). Ross Crane (plaintiff-appellant) appealed the dismissal by the Mitchell County District Court of his petition for damages for wrongful termination of his teaching contract. The reason stated by the trial judge was that Ross Crane failed to exhaust administrative remedies available under K.S.A. 72-5436 *et seq.* The Court of Appeals reversed, holding the appellant's Fourteenth Amendment due process rights had been violated and an action for back pay and damages could be filed in the district court prior to completion of the administrative procedures the parties had undertaken. We granted review.

The facts are undisputed, and are set out in detail in the Court of Appeals opinion, 7 Kan. App. 2d at 431-33. We will briefly summarize them here. The appellant, a nontenured teacher, was employed by Unified School District No. 273 (defendant-appellee) for the 1979-80 school year. Following several instances of serious misconduct on the part of the appellant, culminating in an incident on October 31, 1979, where the appellant discharged a 12-gauge shotgun at his home, striking two students, the school board of Unified School District No. 273 (Board) held a special meeting on November 5, 1979, and terminated appellant's employment. As a result of the shotgun incident the appellant was charged in Mitchell County District Court with unlawfully, feloniously, and willfully applying force to a student at Beloit High School, with intent to injure said student with a deadly weapon. Additional incidents involving the appellant were specified by the Board as precipitating its action. (See 7 Kan. App. 2d at 431, enumerating six specific reasons.) These included an incident where the appellant injured a student while disciplining him by flipping the student over backwards in desk chair; another occasion where the appellant kicked a student who was on crutches in

the foot with such force to cause him to lose his balance; and an incident where the appellant hit a student in the chest with his fist, causing pain and bruising, knowing the student had a heart condition.

A hearing was set by the Board for November 12, 1979, to determine whether the termination of the appellant's employment was to be with or without pay. The appellant received notice of the Board's decision and the reasons for his dismissal, along with notice of the hearing set for November 12, 1979, by certified mail on November 7, 1979. The appellant did not appear at the hearing held on November 12, 1979, nor did anyone appear for him or make a request for postponement in his behalf. The Board after hearing evidence unanimously voted to terminate the appellant's contract without pay as of November 12, 1979.

On November 17, 1979, the appellant requested a due process hearing pursuant to K.S.A. 72-5436 *et seq.,* the Teacher Tenure Law. Both the appellant and the Board participated fully in the subsequent hearing procedure. Each specified their respective committee appointees, a prehearing conference was agreed to and held on January 30, 1980, and a full due process hearing was held on April 22, 1980, before a special three-person hearing committee.

The committee delayed making its findings of fact and recommendations to the Board until such time as both parties submitted briefs requested by the committee. Though the Board prepared and submitted its brief, the appellant never submitted a brief to the committee. The committee ultimately submitted its finding to the Board on May 8, 1981, without having received a brief from the appellant. The majority recommended the Board's decision to terminate the appellant without pay be affirmed.

Meanwhile, on December 17, 1980, the appellant filed his petition in the district court charging that he had been deprived of a property right without due process of law, seeking reinstatement, back salary and damages. Apparently the appellant had abandoned the previously requested hearing committee procedure under the Teacher Tenure Law and ceased to cooperate with the committee at that time.

The Board filed a motion to strike the appellant's petition, citing the appellant's failure to exhaust his administrative remedies set out in K.S.A. 72-5436 *et seq.* Treating the Board's motion

as a motion to dismiss, the district judge held the appellant's claim for wrongful termination was based upon his exercise of a constitutionally protected right and therefore should have been pursued under K.S.A. 72-5446. Because the appellant had not pursued his action under 72-5446, the court held the action must be dismissed for failure to exhaust available administrative remedies. This dismissal was appealed to the Court of Appeals.

As we will discuss in more detail below, the Court of Appeals held, in essence, that (1) appellant's due process rights were violated by the Board's failure to provide him with a hearing before an impartial panel prior to terminating his pay; (2) appellant's failure to attend the hearing set for November 12, 1979, did not constitute a waiver of his constitutional rights, as the hearing which would have been provided would not have complied with due process; and (3) the appellant did not waive his due process rights by requesting and participating in the subsequent hearing procedure because the hearing committee's only function was to determine whether the Board had adequate grounds to terminate the appellant, and was not empowered to address the issue of whether appellant's due process rights had been violated. A dissent was filed by Judge Abbott, who was of the opinion the school board was an impartial panel within the requirements of due process, the appellant had been offered a due process hearing complying with due process but chose not to attend, and the appellant had failed to complete the procedures he had chosen to follow and therefore his case had properly been dismissed by the district court.

At the threshold we must focus on the appellant's contention that he was deprived of due process of law when his teaching contract was terminated mid-year without being afforded a prior hearing. Whether the appellant's rights were violated depends on the procedural safeguards which must be afforded the appellant under both the Fourteenth Amendment and the statutes of this state.

The due process procedure provided under our statutes for terminating teacher contracts is found in the Teacher Tenure Law, K.S.A. 72-5436 et seq. K.S.A. 72-5438 provides that whenever a teacher is given written notice of the Board's intention not to renew the teacher's contract, or whenever a teacher is terminated before the end of his or her contract term, the teacher shall

be provided a statement of reasons for the Board's action and may request a full due process hearing to be held before a special three-member hearing committee. The committee's findings of fact and recommendations are then submitted to the Board which makes a final decision to terminate or renew the contract. K.S.A. 72-5443. If supported by substantial evidence, this decision is final, subject to appeal to the district court pursuant to K.S.A. 1981 Supp. 60-2101. K.S.A. 72-5443; *Kelly v. Kansas City, Kansas Community College,* 231 Kan. 751, 760, 648 P.2d 225 (1982).

The application of the hearing committee procedure is expressly limited in 72-5445 to those teachers who have taught in the school district for at least two consecutive years, except where the teacher alleges he was dismissed as a result of exercising a constitutional right. *The statute does not provide for a hearing in the situation where a teacher has been with the school district for less than two years and was not dismissed for exercising a constitutional right.* K.S.A. 72-5445 does provide, however, that if the teacher had been with any school district in the state for two consecutive years, the school board may waive the two-year requirement and provide a due process hearing prior to termination or nonrenewal.

At the time of his dismissal the appellant had not been teaching in the school district for two consecutive years. The district court held that the appellant's remedy for violation of his constitutional rights was under the procedure set out in 72-5446. However, that section is applicable where ". . . any teacher . . . alleges that the teacher's contract has been nonrenewed *by reason of the teacher having exercised a constitutional right . . . ."* (Emphasis added.) K.S.A. 72-5446(*a*). By its terms this section does not apply to the appellant. The appellant concedes his dismissal was not due to his exercise of a constitutional right. Instead, he claims the *procedure used* to terminate his contract violated his constitutional right to due process. The Court of Appeals correctly held that K.S.A. 72-5446 was not applicable in this case.

Because the due process procedures set out in K.S.A. 72-5436 *et seq.,* did not apply to the appellant, we must look to the constitutional requirements of due process to determine what procedural safeguards should have been afforded in this case. *Wertz v.*

*Southern Cloud Unified School District,* 218 Kan. 25, 29, 542 P.2d 339 (1975).

This court has often held the essential elements of due process of law are notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case. *U.S.D. No. 461 v. Dice,* 228 Kan. 40, 43, 612 P.2d 1203 (1980); *Sinclair v. Schroeder,* 225 Kan. 3, 9, 586 P.2d 683 (1978); *Schulze v. Board of Education,* 221 Kan. 351, 353-54, 559 P.2d 367 (1977); *Wertz v. Southern Cloud Unified School District,* 218 Kan. at 30; *Rydd v. State Board of Health,* 202 Kan. 721, 728, 451 P.2d 239 (1969). See also *Goss v. Lopez,* 419 U.S. 565, 579, 42 L.Ed.2d 725, 95 S.Ct. 729 (1975).

It has been held that a nontenured teacher has no property right in the renewal of his contract at the end of the year which would entitle him to a hearing. *Board of Regents v. Roth,* 408 U.S. 564, 33 L.Ed.2d 548, 92 S.Ct. 2701 (1971). However, a mid-year termination of a nontenured teacher has been treated differently than an end-of-year decision not to renew. In *Wertz v. Southern Cloud Unified School District,* 218 Kan. at 31-33, this court recognized that a nontenured teacher has a property interest in his continued employment sufficient to require a hearing prior to mid-year termination of his contract. See also *Ahern v. Board of Education of Sch. Dist. of Grand Island,* 456 F.2d 399, 402 (8th Cir. 1972); *Cooley v. Board of Education of Forrest City Sch. Dist.,* 453 F.2d 282, 286-87 (8th Cir. 1972); *Bell v. Board of Sch. Com'rs of Mobile Cty.,* 450 F. Supp. 162, 166 (S.D. Ala. 1978); *Wagner v. Little Rock School District,* 373 F. Supp. 876, 882 (E.D. Ark. 1973). In *Wertz,* the plaintiff, a nontenured teacher, was terminated without pay mid-year without prior notice or a hearing for alleged discipline problems existing in his classrooms. The discipline problems were largely due to certain students in the school, and had existed the year previous to the year Mr. Wertz had been hired to teach. Upon being informed of the Board's decision to terminate his contract, the plaintiff was given 30 days to request a hearing, which he declined to do. We held that:

"In the absence of extreme circumstances which might justify immediate termination a teacher is entitled to a hearing prior to his discharge, and the grant of a subsequent hearing under the facts of this case could not cure a failure to provide such a hearing." 218 Kan. at 33.

The United States Supreme Court has recognized that due

process is a flexible concept; the measure of procedure required to be afforded depends on the particular situation involved. *Morrissey v. Brewer,* 408 U.S. 471, 481, 33 L.Ed.2d 484, 92 S.Ct. 2593 (1972). Whether the timing of a hearing comports with due process, given the exigencies and circumstances of any particular case, must be analyzed according to the three-part balancing test outlined in *Mathews v. Eldridge,* 424 U.S. 319, 47 L.Ed.2d 18, 96 S.Ct. 893 (1976). The factors to consider include the private interest that will be affected, the risk of an erroneous deprivation of that interest through the procedures used, and the State's interest in the procedures used as well as the administrative burdens that any additional procedural requirements would entail. 424 U.S. at 335. *Vanelli v. Reynolds School Dist. No. 7,* 667 F.2d 773, 778-79 (9th Cir. 1982). See also *Hortonville Dist. v. Hortonville Ed. Assn.,* 426 U.S. 482, 494, 49 L.Ed.2d 1, 96 S.Ct. 2308 (1976); *Kelly v. Kansas City, Kansas Community College,* 231 Kan. at 761.

In *Wertz* we recognized that the interest of a teacher in not being dismissed mid-year without a hearing is manifest.

"The stigma which attaches to a mid-year dismissal of a nontenured teacher for incompetence is sufficiently injurious to call for a hearing and, even though a hearing is not accorded such teacher by state statute, constitutional requirements of due process operate to overcome the lack of statutory rule. (*Nichols v. Eckert* [Alaska, 1973] 504 P.2d 1359.)

"A teacher who is dismissed without pay during the term of his contract has an interest in continued employment which is safeguarded by due process. (*Wieman v. Updegraff,* 344 U.S. 183, 97 L.Ed.2d 216, 73 S.Ct. 215.)" 218 Kan. at 29-30.

However, we also went on to state:

"The interests of the school district are to protect the students from incompetent teachers and to maintain a proper atmosphere in the classroom for learning. They have an interest in hiring another teacher to replace an incompetent one without incurring the added expense of paying two teachers to fill one position. *Under extreme circumstances involving a serious disruption of the school educational processes it may be imperative that a teacher be relieved of teaching duties immediately but in fairness to a teacher a hearing should ordinarily be afforded before a decision to terminate without pay is made.*" 218 Kan. at 31. (Emphasis added.)

Other courts have also recognized that extreme or unusual circumstances may exist requiring immediate suspension without a prior hearing. See *Bogart v. Unified Sch. Dist. No. 298 of Lincoln Cty.,* 432 F. Supp. 895, 904 (D. Kan. 1977); *Graham v. Knutzen,* 351 F. Supp. 642, 665 (D. Neb. 1972); *Fielder v. Board*

*of Ed. of Sch. Dist. of Winnebago, Neb.,* 346 F. Supp. 722, 729 (D. Neb. 1972). These extreme circumstances are confined to situations in which a legitimate state interest is immediately threatened, thereby justifying pre-hearing action. See *Wagner v. Little Rock School District,* 373 F. Supp. at 882, n. 5.

The Court of Appeals held that the situation involved here was different from that in *Wertz,* in that the appellant's own conduct created a significant state interest in the appellant's immediate suspension in order to avoid serious disruption of the school's educational process, and therefore, the appellant was not entitled to a due process hearing prior to receiving notice of termination of his teaching duties. With this conclusion we agree. This case is to be distinguished from *Wertz* and other cases finding that the circumstances did not warrant the teacher's termination prior to a hearing. For example, in *Wagner v. Little Rock School District,* 373 F. Supp. 876, the plaintiff had been employed as a teacher in the school district for 22 years, when she was transferred from an all-black school to an all-white school. After receiving generalized criticisms of her teaching methods, the plaintiff was terminated mid-year without receiving any notice of the charges against her or that her termination was being considered. She was offered a hearing to discuss the reasons for her dismissal with the school board after being terminated. Similarly, in *Vanelli v. Reynolds School Dist. No. 7,* 667 F.2d 773, the plaintiff had been employed as a teacher for over sixteen years and was dismissed mid-year without a hearing, following allegations from female students that he had made indecent suggestive remarks to them.

In neither *Wagner* or *Vanelli* did the courts find an emergency situation requiring immediate dismissal. Both courts held suspension of the teachers, allowing for a pretermination hearing prior to dismissal, was the appropriate action to take. In both these cases vague and unsubstantiated charges were brought against experienced teachers who had been in the school system for years. The teachers were not made aware of the charges against them until after their dismissals, and no opportunity was provided to allow the teachers to respond to the charges or confront the evidence at the school board meetings prior to when the decisions to terminate their contracts were made. In those cases the risk of erroneous deprivation was substantial. In *Wertz* it appeared that the discipline problems leading to Mr. Wertz's

dismissal were caused by certain students, rather than the plaintiff's lack of ability. These problems had existed the previous year, following which several teachers had been dismissed. There was no showing why the plaintiff could not also have been allowed to complete the year before being discharged.

In the instant case the appellant himself acted in a way on several occasions to threaten the health or safety of students in the school. These incidents are undisputed. Such acts of misconduct occurring during the first few months of the appellant's contract undoubtedly caused a loss of confidence in his abilities as an effective teacher. The incidents also caused parents and school officials to be anxious for the safety of the students in appellant's classrooms. The record reflects that several students withdrew from the appellant's classes, and others had expressed a desire to withdraw at the time of his dismissal. We cannot say under the circumstances the Board was wrong to believe there was a significant state interest requiring the immediate termination of the appellant's teaching duties without a prior hearing.

The appellant's due process claim is thus reduced to his contention that he was entitled to a due process hearing prior to the Board's decision to terminate his pay. In *Wertz,* we stated that although circumstances may exist to justify an immediate termination, a teacher should ordinarily be afforded a hearing prior to the making of a decision to terminate without pay. 218 Kan. at 31. The central question presented in this case, therefore, is whether the hearing scheduled by the Board for November 12, 1979, to determine whether appellant would be terminated with or without pay, was sufficient to satisfy appellant's right to due process, and if so, whether appellant's failure to participate in that proceeding waived his right to a due process hearing or to challenge the sufficiency of the proceeding.

The Court of Appeals held that the hearing offered by the Board on November 12, 1979, was not the type of hearing envisioned by the court in *Wertz,* for the reason that the "hearing was held a scant five days after appellant's receipt of the notification, and the tribunal before which it was held was the school board, the very body that had voted to terminate appellant's contract only one week earlier." 7 Kan. App. 2d at 435. The Court of Appeals concluded the Board lacked the necessary impartiality required by due process, and therefore appellant's failure to

attend the hearing did not waive his due process rights, as the hearing, if held, would not have satisfied the needs of due process.

This determination that the Board was not impartial seems to be based on the fact that the Board had voted to terminate the appellant's contract the week before and the fact that the record did not disclose that evidence was received by the Board prior to voting to terminate the appellant's pay. Counsel for the Board argued at the hearing in the Supreme Court that the Board heard evidence and arguments presented by its counsel prior to terminating appellant's contract without pay. In making its decision, the Court of Appeals relied on the decision in *Bogart v. Unified Sch. Dist. No. 298 of Lincoln Cty.*, 432 F. Supp. 895 (D. Kan. 1977). The court in *Bogart* stated:

"Due process requires the hearing to which plaintiff is entitled, be before an impartial tribunal. There are at least two component factors which must be considered in determining impartiality. First, the individual decision makers must not have exhibited bias as to the factual questions to be decided at hearing; and second, the hearing must occur before dismissal except in unusual circumstances not found in this case." pp. 903-04.

Some courts have reached the conclusion that where a school board has made a prior decision to terminate a teacher's contract, it cannot subsequently be an impartial forum. See *Kendall v. Board of Ed. of Memphis City*, 627 F.2d 1, 5 (6th Cir. 1980); *Cantrell v. Vickers*, 495 F. Supp. 195, 200 (N.D. Miss. 1980). This conclusion, however, has repeatedly been rejected by other courts. The United States Supreme Court has held that the mere fact an administrative board is involved in the investigation of alleged improper conduct does not, without more, create the risk of bias or prejudgment sufficient to render that body incapable of fairly adjudicating the merits of the case. See *Withrow v. Larkin*, 421 U.S. 35, 54-55, 43 L.Ed.2d 712, 95 S.Ct. 1456 (1975). In *Hortonville Dist. v. Hortonville Ed. Assn.*, 426 U.S. at 494-97, the court considered whether a school board's prior involvement in a labor dispute with striking teachers prevented the board from deciding whether those teachers should be dismissed as a result of that strike. There the Supreme Court held:

"Respondents have failed to demonstrate that the decision to terminate their employment was infected by the sort of bias that we have held to disqualify other decisionmakers as a matter of federal due process. A showing that the Board was 'involved' in the events preceding this decision, in light of the important interest

in leaving with the Board the power given by the state legislature, is not enough to overcome the presumption of honesty and integrity in policymakers with decisionmaking power. Cf. *Withrow v. Larkin,* 421 U.S. at 47. Accordingly, we hold the Due Process Clause of the Fourteenth Amendment did not guarantee respondents that the decision to terminate their employment would be made or reviewed by a body other than the School Board." pp. 496-97.

This court has long recognized that a school board has both investigative and prosecutorial functions. In *Million v. Board of Education,* 181 Kan. 230, 310 P.2d 917 (1957), our court held the fact the school board had proposed the plaintiff's dismissal did not disqualify its members to subsequently hear and determine the truth or falsity of the charges alleged. 181 Kan. at 236-37. See also *Morris v. School District,* 139 Kan. 268, 279, 30 P.2d 1094 (1934); 78 C.J.S., Schools and School Districts § 204, p. 1095; 68 Am. Jur. 2d, Schools § 193. In *U.S.D. No. 461 v. Dice,* 228 Kan. 40, 612 P.2d 1203 (1980), we rejected the plaintiff's contention that the school board was a biased body where its members had testified before a hearing committee regarding their decision to terminate the plaintiff, and had later voted to reject the committee's recommendation to renew the plaintiff's teaching contract. We held that the school board had only performed those functions authorized under the statutes and the plaintiff had received a fair and impartial hearing before the hearing committee.

We believe the Court of Appeals misapplied the holding in *Bogart* and erred in holding a school board is assumed to be biased simply because it has made a prior decision to terminate the appellant's teaching duties. In discussing the due process requirement that decisionmakers must be impartial, the court in *Bogart* stated:

"[E]vidence of actual bias which offends due process consists of 'statements on the merits by those who must make factual determinations on contested fact issues . . . where the fact finding is critical.' *Staton v. Mayes,* 552 F.2d 908, at page 914 (10th Cir. 1977). It is not actual bias to have made statements as to policy issues related to the dispute, nor to have stated the charges in instigating an investigation of such." 432 F. Supp. at 904.

Similarly, in rejecting the argument that due process requires a hearing before a tribunal other than the school board which had previously dismissed the teacher, the court in *Simard v. Board of Education of Town of Groton,* 473 F.2d 988, 993 (2nd Cir. 1973) stated:

"We do not believe that due process, varying as it does with differing factual

contexts, requires so much in this case, *absent a showing of actual, rather than potential, bias."* (Emphasis added.)

This view is also expressed in 68 Am. Jur. 2d, Schools § 193, pp. 523-24, where it is stated:

"It is generally recognized that as a practical matter, the members of the board cannot be insulated from some knowledge of the facts on which the dismissal charges are based. Indeed, it has been pointed out that the making of the charges presupposes that the members of the board have some knowledge of the facts. Thus, the fact that a board member has an opinion against the teacher at the time dismissal charges are preferred does not disqualify the member from participating in the hearing or invalidate the proceedings, but the members of the board are required to hear and determine the charges on the evidence before them, un-influenced by other previous impressions. Unless there is evidence that pre-formed opinions of the board members are fixed and unchangeable, or that in the deliberations of the board after hearing all the evidence, the result was dictated by such a preformed opinion, the teacher cannot successfully maintain that he was deprived of a fair and impartial hearing."

Decisions from other jurisdictions have also held that absent a showing of actual bias a school board's participation in a prior termination decision does not render it incapable of being an impartial tribunal at a subsequent hearing. See *Vanelli v. Reynolds School Dist. No. 7,* 667 F.2d at 779-80; *Blair v. Robstown Independent Sch. Dist.,* 556 F.2d 1331, 1335 (5th Cir. 1977); *Swab v. Cedar Rapids Community School District,* 494 F.2d 353, 354-55 (8th Cir. 1974); *Heins v. Beaumont Independent School Dist.,* 525 F. Supp. 367, 372 (E.D. Tex. 1981); *Gilbertson v. McAlister,* 383 F. Supp. 1107, 1110 (D. Conn. 1974).

We construe these authorities as requiring evidence of *actual bias* in order to overcome the presumption of fairness and impartiality on the part of a decision-making body. Judge Abbott stated it best in his dissent, 7 Kan. App. 2d at 440:

"Obviously a school board has some knowledge of the facts and has reached some conclusion before a hearing is ordered. [Citations omitted.] That fact standing alone does not indicate bias, which would require disqualification. All that is required is that an appellant be given an opportunity to be heard and present witnesses, and to examine the evidence to test its accuracy. It is the school board's function to make the ultimate decision, subject only to the requirements of due process of law. The school board normally will have knowledge of the exact reason why it desires to terminate or nonrenew a teacher. Due process requires that the board keep an open mind, that it not become an advocate, and that it give the teacher a fair opportunity to present his or her side of the story and thus prevent the board from acting on erroneous or incomplete information."

No claim is made by the appellant that any statements were

made by members of the Board regarding the factual issues involved in this case which would indicate the existence of bias or prejudice. Under the test set out in *Bogart,* there is no evidence to support the conclusion that the Board was not an impartial panel. Under the facts of this case the Board was the proper body before which the hearing on the issue whether to terminate the appellant with or without pay should have been held.

This decision is further supported by recognizing that under our statutes school boards are vested with broad authority to govern the administration of school districts, including the hiring, firing and disciplining of school teachers. *Schulze v. Board of Education,* 221 Kan. at 353. See K.S.A. 72-5436 *et seq.*; K.S.A. 72-8205. We concur with the view expressed by the Supreme Court in *Hortonville Dist. v. Hortonville Ed. Assn.,* 426 U.S. at 495-96, where it stated:

"State law vests the governmental, or policymaking, function exclusively in the School Board and the State has two interests in keeping it there. First, the Board is the body with overall responsibility for the governance of the school district; it must cope with the myriad day-to-day problems of a modern public school system . . . by virtue of electing them the constituents have declared the Board members qualified to deal with these problems, and they are accountable to the voters for the manner in which they perform. Second, the state legislature has given to the Board the power to employ and dismiss teachers, as a part of the balance it has struck in the area of municipal labor relations; altering those statutory powers as a matter of federal due process clearly changes that balance. Permitting the Board to make the decision at issue here preserves its control over school district affairs, leaves the balance of power in labor relations where the state legislature struck it, and assures that the decision whether to dismiss the teachers will be made by the body responsible for that decision under state law."

It is clearly the intention of our legislature that school boards in this state conduct hearings and make decisions regarding the dismissal of teachers for cause. Absent bias or other disqualifying reasons these decisions should remain with the body deemed by the legislature to be best qualified to make them. In light of the state interest in allowing school boards to make these decisions, we conclude that the mere fact a school board may make a prior decision to dismiss a teacher does not render it incapable of providing the teacher with a subsequent hearing fully complying with due process.

The Court of Appeals opinion also indicates that insufficient time was afforded appellant between his receipt of the notice of

termination and the time scheduled for the hearing. Judge Abbott disagreed in his dissent, pointing out that there is no established time period between notice and hearing in order to afford due process. 7 Kan. App. 2d at 439.

Due process requires that one be given the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 14 L.Ed.2d 62, 85 S.Ct. 1187 (1965). This opportunity must be appropriate to the nature of the case. *Mullane v. Central Hanover Tr. Co.,* 339 U.S. 306, 313, 94 L.Ed. 865, 70 S.Ct. 652 (1950). In other cases involving situations similar to that here it has been held adequate time was given to satisfy due process. In *Ahern v. Board of Education of Sch. Dist. of Grand Island,* 456 F.2d at 402-03, it was held two days' notice was sufficient to comport with accepted notions of due process where the plaintiff did not object to the time of the hearing, did not request a postponement, and participated fully in the proceeding. In *Birdwell v. Hazelwood School District,* 491 F.2d 490, 494-95 (8th Cir. 1974), the notification received by the plaintiff that he would have an opportunity to present his case at a school board meeting being held that night, was not found by the court to violate due process, where the plaintiff had waived his right to object to the insufficiency of the notice by his failure to appear at the meeting and make his objections known.

The length of notice received by the appellant in this case was not per se inadequate. As Judge Abbott pointed out, the appellant did not request additional time and does not suggest whether additional time may have been necessary. Clearly the appellant had the opportunity to request a continuance if he had required additional time. The opportunity required by due process to be heard to defend the charges against him was afforded, but the appellant deliberately chose not to avail himself of it.

The appellant cannot complain now that he was not afforded due process. He was offered a hearing before an impartial tribunal, was given a list of reasons for the Board's action, and was given sufficient notice of the time of the hearing. The right to a due process hearing, like other constitutional rights, can be waived. *Wertz v. Southern Cloud Unified School District,* 218 Kan. at 30. We find here that the appellant made a voluntary and knowing waiver of his right to a due process hearing. See *Fuller v. Laurens County School Dist. No. 56,* 563 F.2d 137, 140 (4th

Cir. 1977); *Birdwell v. Hazelwood School District,* 491 F.2d at 494-95; *Heins v. Beaumont Independent School Dist.,* 525 F. Supp. at 373; *Schulze v. Board of Education,* 221 Kan. at 354.

Accordingly, we hold the decision of the trial court was correct. The judgment of a trial court, if correct, is to be upheld, even though the court may have relied upon a wrong ground or assigned an erroneous reason for its decision. *Farmers State Bank v. Cooper,* 227 Kan. 547, Syl. ¶ 10, 608 P.2d 929 (1980).

The judgment of the Court of Appeals is reversed, and the judgment of the district court dismissing the damage action filed by the appellant is affirmed.

FROMME, J., not participating.