(882 P.2d 483)
No. 70,472

ROBERT HUBBARD, *Appellant*, v. BOARD OF EDUCATION, U.S.D. NO. 434, OSAGE COUNTY, KANSAS; KARLA PIERCE; ROBERT J. CAIRNS; SHEILA R. DALE; C. MIKE FAWL; PAUL LIRA; and RICHARD RUMSEY, *Appellees*.

Opinion filed June 24, 1994.

*Richard D. Anderson*, of Topeka, for the appellant.

*Fred W. Rausch, Jr.*, of Topeka, for the appellee U.S.D. No. 434.

*Robert V. Eye*, of Irigonegarary & Associates, of Topeka, for the appellee Richard Rumsey.

Before BRISCOE, C.J., PIERRON, J., and CARLOS MURGUIA, District Judge, assigned.

PIERRON, J.: Robert Hubbard, plaintiff-appellant, appeals the district court decision granting summary judgment for defendants

on all claims. Hubbard argues the court erred by dissolving a temporary injunction and by holding the defendants were entitled to qualified immunity.

Hubbard is a tenured teacher in Osage County U.S.D. No. 434. On April 7, 1992, the U.S.D. No. 434 Board of Education informed Hubbard of its intention to terminate his contract due to allegations of improper conduct by students in one of his classes which was recorded on videotape. The Board conducted a hearing on April 14 and suspended Hubbard's teaching responsibilities, pending a due process hearing. On September 28, 1992, the due process hearing panel recommended reinstating Hubbard, finding the incident giving rise to his suspension was isolated and out of the norm.

On October 5, 1992, the Board voted to appeal the hearing committee's decision. The Board also voted to hold another hearing to determine whether Hubbard should be suspended with or without pay during the pendency of the action.

The second hearing was held October 9, 1992. Hubbard appeared at the open session of the Board with counsel and called two witnesses. After hearing Hubbard's witnesses, and viewing the videotape, the Board met in executive session. Upon reconvening the meeting, the Board unanimously adopted a resolution terminating Hubbard's pay until the case was resolved on appeal.

Hubbard filed a petition in the district court seeking injunctive relief and damages, pursuant to 42 U.S.C. § 1983 (1988). He also sought damages for breach of contract and a writ of mandamus. The court granted the injunction, preventing the Board from terminating Hubbard's pay pending the court's decision on the Board's appeal. The district court affirmed the hearing panel's decision and ordered Hubbard reinstated. The Board appealed to this court, which affirmed the district court's decision. *U.S.D. No. 434 v. Hubbard*, 19 Kan. App. 2d 323, 868 P.2d 1240 (1994), *rev. denied* June 7, 1994.

After the district court ruled on the Board's appeal, the Board and its members moved for summary judgment in the civil rights case (this case), seeking rescission of the restraining order and a decision in its favor on the issue of monetary damages. The district court entered summary judgment for the defendants, holding they were entitled to qualified immunity. The court also lifted the

injunction, noting the decision on the merits of the case took away the reason for the injunction.

Hubbard appeals, claiming the injunction should not have been lifted, that the defendants are not shielded by qualified immunity, and that he is entitled to relief by mandamus.

The parties break the argument into multiple separate issues. However, the issues can be more easily addressed by grouping them as follows:

I. Was the district court correct in holding the defendants were shielded by qualified immunity?

II. Did the hearing provide Hubbard with due process?

III. Did the court err by dissolving the injunction?

IV. Did the court err by dismissing the breach of contract claim?

V. Was the plaintiff entitled to relief by mandamus?

**I. Was the district court correct in entering summary judgment for the defendants based on the defense of qualified immunity?**

The defendants moved for summary judgment, raising the defense of qualified immunity. Summary judgment is appropriate when there are no disputed questions of material fact and the moving party is entitled to judgment as a matter of law. K.S.A. 60-256(c).

42 U.S.C. § 1983 states:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The Supreme Court of the United States has held that governmental officials are entitled to the common-law immunities for actions brought pursuant to this statute. The right to immunity is not, in all cases, absolute. In this case, the defendants argue they were entitled to qualified immunity. Qualified immunity is a way " 'to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.' " *Harlow v. Fitzgerald*, 457

U.S. 800, 807, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982) (quoting *Butz v. Economou*, 438 U.S. 478, 506, 57 L. Ed. 2d 895, 98 S. Ct. 2894 [1978]).

The district court held the defendants were entitled to summary judgment based on the defense of qualified immunity. In *Harlow v. Fitzgerald*, 457 U.S. at 818, the United States Supreme Court stated: "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. [Citations omitted.]"

In *Anderson v. Creighton*, 483 U.S. 635, 640, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987), the United States Supreme Court stated:

"[O]ur cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful [citation omitted]; but it is to say that in the light of pre-existing law the unlawfulness must be apparent."

These cases establish an objective, not subjective, standard of reasonableness.

Hubbard argues the Board did not have the authority to suspend him without pay while appealing the hearing committee's decision. At the time the Board acted, the Supreme Court had not rendered its decision in *McMillen v. U.S.D. No. 380*, 253 Kan. 259, 855 P.2d 896 (1993) (*McMillen II*). The court had considered the constitutionality of the statutory due process procedure and held it was constitutional. See *U.S.D. No. 380 v. McMillen*, 252 Kan. 451, 845 P.2d 676 (1993) (*McMillen I*). In *McMillen II*, the court held a school board may terminate a teacher's contract and pay after the board decides to appeal a due process committee recommendation to reinstate the teacher. *McMillen II*, 253 Kan. at 272.

Hubbard attempts to distinguish the facts of his case from *McMillen II*. There is a distinction. In *McMillen II*, the board did not offer the teacher a new contract. The court held the

statutory right to contract continuation did not apply when a board gives the statutorily required notice of its intent not to renew. *McMillen II*, 253 Kan. at 269.

It appears in this case the Board did not terminate Hubbard's contract. Rather, the Board chose to continue his suspension, but without pay. Hubbard notes the Board renewed his contract for the 1992-93 and 1993-94 school years. There is support for this in the record. The Board denies that it renewed Hubbard's contract.

It is not clear why the Board renewed Hubbard's contract, if, in fact, it was renewed, or what effect the renewal has on the case. The Board's original notice to Hubbard stated his contract was terminated. If the contract was renewed, the renewal occurred after the Board appealed the due process committee's decision. Thus, at the time the Board suspended Hubbard without pay, he was without a contract. This means the *McMillen II* facts and the facts here are sufficiently similar to allow *McMillen II* to be used as precedent.

The state of the law was unclear at the time the Board acted, and the Board apparently guessed right. The district court correctly held the Board had not violated a clearly established law and was entitled to qualified immunity for its actions. A more precise holding, perhaps, would have been that no right had been violated.

## II. Did the hearing provide Hubbard with due process?

Hubbard claims the hearing at which the Board decided to suspend his pay was not fair. Fairness is a fundamental requirement of due process. Thus, according to Hubbard, the Board violated his Fourteenth Amendment right to due process.

He premises his allegations of unfair process on two points: First, he claims each Board member reached a decision about suspension without pay before the hearing. Second, Hubbard claims the Board made, or allowed members of the public to make, defamatory statements about him. The statements were not received as evidence. However, the statements were made in an open meeting.

Because the Board's decision is supported by case law, we question whether this court should now examine the process the

Board used to reach its decision. In retrospect, it is obvious the Board could have suspended Hubbard's pay without a second hearing. On the other hand, there is an argument that any quasi-judicial process, whether it results in a legally supportable conclusion or not, should be conducted in accord with constitutional requirements. We find that the hearing substantially complied with due process (so it is unnecessary to decide whether an unfair hearing could be excused).

Did the Board make, or allow citizens to make, defamatory statements about Hubbard?

The hearing was held in open session at Hubbard's request. Thus, he cannot complain the procedure violated his constitutional rights. The Board did view the videotape in question during the open meeting. However, Hubbard does not have standing to raise any issues on behalf of anyone else portrayed in the videotape. Further, the comments Hubbard finds offensive were made by members of the public at a different meeting of the Board and not during the suspension hearing. The Board did not allow improper public comment during the suspension hearing.

Were the Board members impartial?

Hubbard complains the Board members were not impartial; therefore, the hearing was unfair. In the motion for summary judgment, the Board claimed the members were impartial and acted only after considering the evidence. In *Bogart v. Unified Sch. Dist. No. 298 of Lincoln Cty.*, 432 F. Supp. 895, 903-04 (D. Kan. 1977), the court stated:

"Due Process requires the hearing to which plaintiff is entitled, be before an impartial tribunal. There are at least two component factors which must be considered in determining impartiality. First, the individual decision makers must not have exhibited bias as to the factual questions to be decided at hearing; and second, the hearing must occur before dismissal except in unusual circumstances not found in this case. As to the first requirement, evidence of actual bias which offends due process consists of 'statements on the merits by those who must make factual determinations on contested fact issues . . . where the fact finding is critical.' *Staton v. Mayes*, 552 F.2d 908, at page 914 (10th Cir. 1977). It is not actual bias to have made statements as to policy issues related to the dispute, nor to have stated the charges in instigating an investigation of such. Although questions asked plaintiff by the Board's attorney at the August 21, 1973 hearing indicated prior acquaintance by some members with facts and rumors having to do

with plaintiff's arrest, it does not clearly appear that such members had already decided as to the veracity of such rumors."

See *Crane v. Mitchell County U.S.D. No. 273*, 232 Kan. 51, 652 P.2d 205 (1982).

Although the facts of the instant case differ from the facts of *Bogart*, the definition of bias set out in that case may be applied here. The Board was familiar with Hubbard's case. Familiarity, however, is not sufficient to support a charge of bias. In *Crane*, 232 Kan. at 62, the Kansas Supreme Court quoted 68 Am. Jur. 2d, Schools § 193:

" 'It is generally recognized that as a practical matter, the members of the board cannot be insulated from some knowledge of the facts on which the dismissal charges are based. Indeed, it has been pointed out that the making of the charges presupposes that the members of the board have some knowledge of the facts. Thus, the fact that a board member has an opinion against the teacher at the time dismissal charges are preferred does not disqualify the member from participating in the hearing or invalidate the proceedings, but the members of the board are required to hear and determine the charges on the evidence before them, uninfluenced by other previous impressions. Unless there is evidence that preformed opinions of the board members are fixed and unchangeable, or that in the deliberations of the board after hearing all the evidence, the result was dictated by a such a preformed opinion, the teacher cannot successfully maintain that he was deprived of a fair and impartial hearing.' "

The Board members had some impressions when they convened to determine whether to suspend Hubbard without pay. The question is, could they overcome those impressions? A decision-making body is presumed to act fairly. Evidence of actual bias is required to overcome this presumption. 232 Kan. at 63. The Board's disagreement with the hearing committee is obvious. The decision was appealed. That does not in itself show actual bias on the issue of suspension without pay. The burden is on Hubbard to present some evidence to overcome the presumption. He has not been able to do that. Although only one Board member stated a reason for terminating Hubbard's pay, the silence or lack of knowledge on the part of the other members does not, by itself, prove bias.

### III. Did the court err by dissolving the injunction?

Hubbard argues the district court should not have dissolved the temporary injunction which prohibited the Board from sus-

pending him without pay, pending the resolution of the appeal. By the time Hubbard's 42 U.S.C. § 1983 damages action was heard in district court, the same district judge had already ruled in Hubbard's favor on the substantive issue. Clearly, the need for the injunction had expired. If Hubbard desired to continue the injunction pending resolution of the appeal to this court, his remedy was to apply to the Court of Appeals for an injunction. He did, and the court denied the motion. The district court did not have the authority to continue the injunction. This issue is without merit.

**IV. Did the court err by dismissing the breach of contract claim?**

Hubbard's breach of contract claim was based on a contract clause which requires the Board to follow all laws of the State of Kansas and the United States. Hubbard claims the Board violated this clause by denying him due process of law. Once the district court determined the Board had complied with those laws, Hubbard's contract claim failed. The court correctly dismissed Hubbard's breach of contract claim.

**V. Was the plaintiff entitled to relief by mandamus?**

Hubbard claims he is entitled to mandamus. "Mandamus is an extraordinary remedy generally recognized as appropriate for the purpose of compelling a pubic officer to perform a clearly defined duty imposed by law and not involving the exercise of discretion." *McMillen II*, 253 Kan. 259, Syl. ¶ 1.

The issue of mandamus was moot once the court ordered Hubbard reinstated. Hubbard wanted a writ of mandamus to order the Board to follow due process. The Board was not refusing to act. Rather, the Board acted in a way which Hubbard felt was contrary to the law. Mandamus was not an appropriate remedy— Hubbard did not want action, he wanted redress.

Affirmed.