**Supreme Court**

No. 2012-66-M.P.

David J. Alba                         :

v.                             :

Cranston School Committee.           :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

David J. Alba　　　　　　　　:

v.　　　　　　　　　　　:

Cranston School Committee.　　　:


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**  This case is before the Court on a writ of certiorari. David J. Alba (Alba) petitioned this Court to review a decision of the Board of Regents for Elementary and Secondary Education (Board of Regents).  The Board of Regents affirmed a decision of the Commissioner of Education which upheld the Cranston School Committee's vote to reject a recommendation to renew Alba's employment contract.  For the reasons set forth in this opinion, we affirm the decision of the Board of Regents.

## I

### Facts and Travel

Alba was appointed in the beginning of the 2007-2008 school year to serve as Principal of Glen Hills Elementary School in Cranston, Rhode Island.  Thereafter, Alba and the Cranston School Committee entered into an employment contract (contract) for the following school year. The contract ran from July 1, 2008 to June 30, 2009 and provided the following with regard to renewal:

> "The parties hereto may, by mutual agreement in writing, extend or renew this contract for additional periods * * *. In the event that the Committee does not affirmatively vote to extend or renew this contract on or before December 30, 2008, the Contract is automatically terminated and the Administrator shall be deemed non-renewed as of July 1, 2009. In the event of automatic termination and non-renewal, the Administrator may request a hearing before the Committee and be afforded any rights available under applicable law. Nothing contained in this agreement shall alter the Administrator's rights under R.I.G.L. [§] 16-12.1-3, or otherwise under R.I.G.L. [§] 16-12.1-1, et seq."

General Laws 1956 chapter 12.1 of title 16, known as the "School Administrators' Rights Act," (the act) affords certain protections to school administrators who are not otherwise protected by the terms of a collective-bargaining agreement.

In a letter dated December 9, 2008, the Cranston School Committee (committee) informed Alba that it would be discussing his contract at its upcoming meeting on December 15, 2008. The letter also informed Alba that he could request the committee's discussion of his contract be held in open session, but Alba did not make such a request. At the December meeting, Superintendent M. Richard Scherza recommended renewal of Alba's contract for an additional year.[1] Committee member Frank Lombardi stated that he would support continuing Alba's employment for an additional year, provided that Alba was assigned to a different school. The representative for the ward containing Glen Hills School, committee member Andrea Iannazzi, voiced her opposition to renewing Alba's contract. After the chairman of the committee suggested that more time be taken to consider Alba's contract, the committee agreed to withdraw the resolution recommending renewal.

The committee continued its discussion of Alba's employment at its meeting on March 16, 2009. At the March meeting, Superintendent Scherza informed the committee that Alba was

---

[1] Our discussion of events taking place during the committee's executive sessions is based upon the summaries of those sessions contained in the record.

amenable to transferring schools. He stressed that Alba was a "good educator" under whose leadership writing scores had improved. Member Iannazzi opined, however, that renewing Alba's contract for another year would be "postponing the inevitable."[2] The committee again took no action on Alba's contract. Sometime during that same month, Superintendent Scherza completed an evaluation of Alba's performance as principal. He rated Alba as either "proficient" or "adequate" in all areas but noted several ways in which Alba needed to improve his performance.[3]

On April 20, 2009, the committee took up consideration of Alba's contract for the third time. The committee discussed Alba's contract in executive session[4] and then voted six-to-one in open session to reject Superintendent Scherza's renewal recommendation. Immediately after voting on Alba's contract, the committee—still in open session—considered a recommendation not to renew the contract of another principal at a different elementary school. During the discussion that ensued, member Lombardi compared Alba's case to the other principal's case by remarking that "he voted * * * the way he did [on Alba's renewal] because of what he saw as a significant amount of evidence suggesting that [Alba] is not prepared or equipped for the job of a principal," whereas "he had not had that kind of information submitted to him in any way, shape or form regarding [the other principal]."

The chairman informed Alba of the committee's vote by letter dated May 8, 2009. In an explanation of the committee's decision, the chairman wrote, "[t]he reason for this action is that

---

[2] The summary of the minutes from the committee's executive session on March 16, 2009 is brief, but it states that the committee engaged in "[a] lengthy discussion * * * regarding the overall performance of" Alba.

[3] There were four possible scores for each area under evaluation: "Distinguished," "Proficient," "Adequate" or "Unsatisfactory."

[4] The two-paragraph summary of the executive session minutes from April 20, 2009 does not reveal the substance of the committee's discussion.

there are more qualified individuals available to better meet the needs of the District." The letter also advised Alba that he was entitled to a prompt hearing "prior to the School Committee taking a final action of not renewing your contract[.]" Alba notified the committee of his intent to exercise his right to a hearing and requested that the committee provide him with certain information that he felt he needed to prepare for the hearing. In particular, Alba requested that the committee "identify the individual or individuals who provided the information upon which [it] relied in non-renewing * * * Alba's contract." He further asked for two specific witnesses to be made available to testify at the hearing. In the weeks leading up to the hearing, Alba's counsel made additional requests by email for information about the committee's vote, including any records of the executive session at the April 20, 2009 meeting and a copy of his personnel file. In response, the committee's counsel confirmed that the requested witnesses would be available and provided Alba with a copy of his personnel file. The committee's counsel informed Alba, however, that he was not entitled to the minutes from the committee's executive sessions, emphasizing that there was no right to discovery in advance of the hearing.[5]

The committee held a hearing on the nonrenewal of Alba's contract on June 30, 2009, the evening before the contract was due to expire. Member Iannazzi and member Janice Ruggieri, acting on the advice of the committee's counsel, recused themselves from participating in the

---

[5] On June 9, 2009, prior to the hearing, Alba filed a complaint in Kent County Superior Court seeking, inter alia, declaratory and injunctive relief. In an order entered on September 1, 2009, a Superior Court justice denied Alba's request for a preliminary injunction. In that order, the Superior Court justice found that the committee had not violated Alba's rights under the School Administrators' Rights Act.

hearing. Member Lombardi declined to recuse himself despite Alba's insistence that his comments at the April 20, 2009 meeting evinced a disqualifying bias.[6]

When the hearing commenced, Alba's counsel requested a continuance, citing the committee's failure to provide him with the information he had been seeking. He renewed his requests for the executive session minutes from the committee's discussions of Alba's employment and any documentation that the committee may have relied upon in reaching its decision that there were others with qualifications superior to Alba's. Counsel asserted that, without this information, he could not effectively represent Alba at the hearing. In response, the committee's counsel[7] objected to Alba's request for a continuance, reasoning that Alba was not entitled to any of the information that he was seeking. The hearing officer denied Alba's requests for a continuance and for information.

After the hearing officer's ruling, Alba and his counsel left the hearing under protest that the process was fundamentally unfair. The committee's counsel then proceeded to call three witnesses. Judith Lundsten, the executive director of educational programs and services, averred that she had received complaints about Alba from at least two parents. Peter Nero, the then-assistant superintendent, also testified about complaints that he had received from parents concerning Alba's performance as principal. Superintendent Scherza, in contrast, opined that Alba would make a "good principal" if given a chance. At the close of the hearing, the

---

[6] Before the hearing opened, several parents who were in attendance that evening came forward to express their support for Alba. Alba's counsel also submitted written endorsements of Alba which he suggested should have been included in Alba's personnel file.

[7] During the hearing, the committee's counsel appears to have fulfilled a quasi-prosecutorial role by presenting witnesses and arguing in opposition to Alba's counsel. Another individual was responsible for making legal rulings. We refer to the latter individual as the "hearing officer;" and, for the sake of consistency, we continue to refer to the committee's usual counsel as the "committee's counsel."

committee voted three-to-one to uphold its April 20, 2009 decision rejecting the recommendation to renew Alba's contract.

Alba appealed the committee's decision to the Commissioner of Education (commissioner). In lieu of holding a hearing, Alba and the committee submitted an agreed statement of facts and legal memoranda. Alba also supplemented the record with a copy of his evaluation. In a written decision issued on August 3, 2010, the commissioner concluded that Alba had received all the process to which he was entitled under both the contract and the School Administrators' Rights Act. She specifically concluded that the chairman's May 8, 2009 letter provided Alba with adequate notice of the reason for the committee's initial vote. Although she acknowledged that "there is a great deal of logic to" Alba's argument that he needed discovery to prepare for the hearing, the commissioner ultimately rejected this argument. Accordingly, the commissioner denied and dismissed Alba's appeal.

Alba exercised his right under G.L. 1956 § 16-39-3 to appeal the commissioner's decision to the Board of Regents. In his appeal, Alba challenged the committee's nonrenewal of his contract on multiple grounds. He argued, inter alia, that (1) the committee lacked the statutory authority to nonrenew his contract; (2) the chairman's May 8, 2009 letter was invalid; (3) member Lombardi improperly refused to recuse himself at the hearing; and (4) the committee deprived him of his right to prehearing discovery.

The Board of Regents rejected Alba's arguments in a written decision issued on February 2, 2012. The board concluded that the committee had the authority to withhold its consent to the superintendent's recommendation to renew. It also agreed with the commissioner that the committee had fully respected all of Alba's procedural rights and that the committee was under

- 6 -

no obligation to afford Alba the information he had requested in advance of the hearing. The board therefore affirmed the commissioner's decision.

Alba petitioned this Court for a writ of certiorari to review the decision of the Board of Regents. On September 6, 2012, we granted Alba's petition.

## II

## Standard of Review

When this Court reviews a decision of the Board of Regents by way of a petition for certiorari, we confine ourselves to an examination of the record for alleged errors of law. Kingston Hill Academy v. Chariho Regional School District, 21 A.3d 264, 269 (R.I. 2011). Our review of questions of law is de novo. Id. at 269-70. Although we afford deference when a statute is susceptible to more than one reasonable interpretation and the agency charged with its enforcement has given an interpretation that is not clearly erroneous or unauthorized, we retain "final responsibility for statutory construction[.]" Asadoorian v. Warwick School Committee, 691 A.2d 573, 577 (R.I. 1997) (quoting Gallison v. Bristol School Committee, 493 A.2d 164, 166 (R.I. 1985)). "It is not our function to review the lower tribunal's findings of fact when there is competent evidence to support th[o]se findings." D'Ambra v. North Providence School Committee, 601 A.2d 1370, 1374 (R.I. 1992) (quoting School Committee of Providence v. Board of Regents for Education, 429 A.2d 1297, 1302 (R.I. 1981)).

## III

## Discussion

On appeal Alba challenges several actions of both the committee and its chairman as being in excess of their statutory authority. He also alleges that the committee's nonrenewal of his contract suffered from multiple procedural infirmities and irregularities that were so severe as

to deprive him of his rights under the Administrators' Rights Act. We address separately each of Alba's arguments.[8]

<h1 style="text-align:center">A</h1>

<h2 style="text-align:center">Renewal Clause of the Contract</h2>

Alba argues that the clause of his contract providing for automatic nonrenewal is inconsistent with the Administrators' Rights Act and, is therefore, invalid. In Alba's opinion, the renewal clause was an unlawful attempt on the part of the committee to deprive him of his right to a hearing.

The plain language of the contract, however, belies Alba's assertion that the committee was attempting to circumvent the Administrators' Rights Act. The renewal clause specifically preserves Alba's rights under the act. That clause states that "[n]othing contained in this agreement shall alter the Administrator's rights under R.I.G.L [§] 16-12.1-3, or otherwise under R.I.G.L. [§§] 16-12.1-1. et seq." Under § 16-12.1-3, an administrator is entitled to a hearing before the committee "[p]rior to [the committee's] taking final action dismissing or not renewing the employment of [the] administrator." In this case, the committee afforded Alba a hearing on

---

[8] Although Alba's allegations of error are largely procedural, he does make one argument attacking the substance of the committee's decision as arbitrary and capricious. He specifically points to the fact that the committee renewed the contract of another principal at a different school and suggests that the committee acted arbitrarily by not affording him the same opportunity that it afforded the other principal to improve his performance. We succinctly address this argument by noting that an agency's differing treatment of different individuals does not generally amount to arbitrariness, provided that the record discloses a reasoned basis for the distinction. See Mill Realty Associates v. Crowe, 841 A.2d 668, 675 (R.I. 2004); accord McKenzie v. Webster Parish School Board, 609 So.2d 1028, 1032 (La. Ct. App. 1992) (finding renewal of other teachers at other schools irrelevant to the plaintiff's claim of arbitrariness). Here, the committee's discussion of the other principal's contract at its April 20, 2009 meeting spans nearly nine single-spaced pages of the record. Those pages disclose several understandable reasons for the committee's decision to renew the other principal's contract. In particular, the committee found it significant that the other principal, in contrast to Alba, never received a formal evaluation.

June 30, 2009, after its initial vote not to renew his contract on April 30, 2009 but, significantly, prior to taking a final vote.

Nothing in the Administrators' Rights Act prohibits automatic nonrenewal. The absence of such a prohibition in the provisions governing administrators' employment may be contrasted with the provisions governing teachers' employment, which specifically command that "[t]eaching service shall be on the basis of an annual contract" which "shall be deemed to be continuous unless the governing body of the schools shall notify the teacher in writing on or before March 1 that the contract for the ensuing year will not be renewed * * *." General Laws 1956 § 16-13-2. The Legislature therefore knows how to call for automatic renewal. If it desired the same measure for administrators, it could have directed as such in the provisions of the Administrators' Rights Act. See In re Proposed Town of New Shoreham Project, 25 A.3d 482, 525 (R.I. 2011) (reasoning that "the General Assembly knew how to require a net-benefit test when it wanted the [Public Utilities] [C]ommission to use that type of analysis"); Rubano v. DiCenzo, 759 A.2d 959, 969 (R.I. 2000). Accordingly, we conclude that nothing in the language of the contract's renewal clause, or the committee's implementation of that clause, deprived Alba of his rights under the Administrators' Rights Act.

**B**

**Committee's Authority Not to Renew the Contract**

Alba next argues that the committee lacked the authority to nonrenew his contract. Alba views the committee's statutory role as limited to ratifying the hiring decisions of the superintendent. He took the position at the committee hearing, and maintains the same position before this Court, that nonrenewal may only be effectuated upon the recommendation of the superintendent not to renew. We disagree.

- 9 -

The Legislature has clearly vested the committee with authority to choose the administrators who will run its schools. The general powers and duties of local school committees include entering into contracts and giving "advice and consent on the appointment by the superintendent of all school department personnel." General Laws 1956 § 16-2-9(a)(13) and (18). Moreover, in the statement of purposes for the Administrators' Rights Act, the Legislature declared its intent that the protections afforded in that chapter not "interfere with the discretion of school committees to choose those who shall administer local schools * * *." Section 16-12.1-1. Consistent with these statutory provisions, Alba and the committee entered into a one-year employment agreement that explicitly gave the committee the right to decline to renew Alba's contract. Provided that it afforded Alba notice and a hearing, the committee was free to exercise that contractual right by voting against the superintendent's recommendation to renew.

Alba has not pointed to any statutory or contractual language to support his assertion that nonrenewal may be accomplished only after a recommendation from the superintendent for nonrenewal. We will not read such a limit into either the contract or the relevant statutory provisions. In rejecting a similar argument that a school board may not veto a superintendent's recommendation to renew, another court has astutely observed that "[i]f * * * [a b]oard [must] reemploy all probationary teachers whom the superintendent recommends for reemployment * * * the [b]oard['s] vote upon the teacher's reemployment * * * becomes meaningless. A board bound to conform to the superintendent's recommendations is merely a rubber stamp." Taylor v. Crisp, 212 S.E.2d 381, 385 (N.C. 1975); see also Richardson v. Terry, 893 So.2d 277, 285, 286 (Ala. 2004) (rejecting argument that nontenured teacher could be nonrenewed only upon recommendation of the superintendent where statute governing nonrenewals did not require

- 10 -

superintendent's recommendation). Similarly, if we were to adopt Alba's position that the committee must accept a recommendation for renewal, the committee's role under the act in taking a final vote on an administrator's employment would be reduced to that of a rubber stamp. We therefore agree with the board that the committee acted within its authority when it voted against the superintendent's recommendation to renew Alba's contract.

### C

### Committee Member's Failure to Recuse

Alba argues that member Lombardi's participation in the June 30, 2009 hearing deprived him of his right to a hearing before a fair and impartial tribunal. He points to Lombardi's statement during the open session of the April 20, 2009 committee meeting that "he voted * * * [against Alba] because of what he saw as a significant amount of evidence suggesting that [Alba] is not prepared or equipped for the job of a principal." This statement, Alba asserts, demonstrates that Lombardi had already formed a belief about Alba's incompetence before the hearing. Alba concludes that Lombardi's remark evinced a disqualifying bias.

The statutory scheme set forth in the Administrators' Rights Act necessarily contemplates that the committee members will have formed an opinion about the renewal of an administrator's contract before the hearing takes place. Section 16-12.1-3 of the act dictates that "[p]rior to taking final action * * * not renewing the employment of an administrator," the committee must provide the administrator with a written statement of the bases or reasons for the nonrenewal and notify the administrator of his or her right to a prompt hearing. In analyzing a similar statutory scheme which governs the nonrenewal of nontenured teachers,[9] we observed that the post-notice

---

[9] The provision at issue in Jacob v. Board of Regents, 117 R.I. 164, 167, 365 A.2d 430, 432 (1976), entitled nontenured teachers to a "statement of cause" for nonrenewal and a hearing before the full school committee.

hearing affords a "teacher who has already been acquainted with the reasons why a board of education has decided not to renew his contract a full and fair opportunity to persuade and convince the board that it is mistaken in that decision."[10]  Jacob v. Board of Regents for Education, 117 R.I. 164, 170, 365 A.2d 430, 433 (1976) (internal quotation marks omitted).  We therefore explained that, at the hearing, "the committee * * * ha[s] a duty to listen to a dissatisfied teacher in an objective manner and fairly consider its original decision."  Id. at 171, 365 A.2d at 434.  Rhode Island is not alone in allowing school committees to play overlapping roles by both initiating proceedings to end teachers' employment and making the final decision.  Courts faced with comparable provisions have reached similar conclusions that the impartiality required under such a statutory scheme is not the avoidance of forming an initial opinion, but rather the willingness to fairly reconsider that opinion.  Put somewhat differently, "[u]nless there is evidence that preformed opinions of board members are fixed and unchangeable, or that in the deliberations after hearing all the evidence, the result was dictated by such a preformed opinion, the [employee] cannot successfully maintain that he was deprived of a fair and impartial hearing."  Kizer v. Dorchester County Vocational Education Board of Trustees, 340 S.E.2d 144, 148 (S.C. 1986); accord Hubbard v. Board of Education, 882 P.2d 483, 487-88 (Kan. Ct. App. 1994); Palmer v. Van Buren R-1 Board of Education, 872 S.W.2d 590, 593 (Mo. Ct. App. 1994) ("The critical inquiry is whether a review of the record 'indicates that the board of education's prior knowledge * * * resulted in an irrevocable commitment on its part to terminate [the teacher], regardless of what the evidence at the hearing, pro or con, might reveal * * *.'"

---

[10] We also described the nonrenewal hearing as "not quasi-judicial in nature."  Jacob, 117 R.I. at 171, 365 A.2d at 434.  Alba's description of the committee as "a quasi-judicial hearing board" is therefore inaccurate.

- 12 -

(quoting Cochran v. Board of Education of Mexico School District No. 59, 815 S.W.2d 55, 63 (Mo. Ct. App. 1991)).

Our review of the record discloses no evidence which would tend to suggest that Lombardi was unable to fairly reconsider his original decision not to renew Alba's contract. His statement at the April 20, 2009 meeting was no more than an explanation of his initial vote. When Lombardi later declined to recuse himself at the June 30, 2009 hearing, he avowed that he had not prejudged the case and that he could keep an open mind. At the close of the hearing, he indicated that his second vote had been based on the evidence, or lack of evidence, presented at the hearing. We are therefore satisfied that Lombardi's refusal to recuse himself did not deprive Alba of his right to a fair hearing.

**D**

**Requests for Discovery**

Alba advances several arguments concerning the committee's denial of his requests for prehearing discovery. The general thrust of Alba's claims is that the lack of discovery deprived him of his right to a meaningful hearing under the act. He acknowledges that there is no right to prehearing discovery under the act, but he urges us to imply such a right. Alba perceives the committee's denial of his discovery requests as a deliberate attempt to insulate itself from hearing his "side of the story." He particularly asserts that without discovery he could not effectively cross-examine witnesses at the hearing or erase any harmful innuendo that had attached to his nonrenewal.

As Alba concedes, he has no express right to discovery. There were, however, several other avenues for obtaining information and building a record that Alba chose not to pursue. Alba was informed by letter before each of the three committee meetings that he could request

that his employment be discussed in open session. He did not respond to any of the letters or show any interest in the committee's proceedings until he received the chairman's May 8, 2009 letter informing him of the committee's vote.

More significantly, Alba and his counsel then refused to participate in the June 30, 2009 hearing. The hearing before the school committee is the primary mechanism under the act for an administrator to ensure that his or her employment is not being ended for impermissible reasons and "to erase harmful innuendo from any suspension, dismissal, or nonrenewal." Section 16-12.1-1. The administrator, with the assistance of counsel, has a right to present and cross-examine witnesses at the hearing. See § 16-12.1-4. From our perspective, it was Alba's own actions in abandoning the hearing, rather than any deliberate attempt at obstruction on the part of the committee, that deprived him of the ability to cross-examine witnesses or remove innuendo from his nonrenewal. We find further support for this conclusion in the fact that the committee's counsel did cooperate with several of Alba's prehearing requests. Although it is not entirely clear why the committee did not oblige Alba's request for the minutes,[11] the record indicates that Alba requested and was provided with a copy of his personnel file in advance of the hearing. Alba also specifically requested that the committee make Ms. Lundsten and Superintendent Scherza available as witnesses for the hearing. Alba was assured by the committee's counsel in advance of the hearing that both individuals would be in attendance, and in fact, both Ms. Lundsten and Superintendent Scherza testified at the hearing. Alba and his counsel, however, walked out of the hearing without making any attempt to examine either witness. If Alba disagreed with the hearing officer's rulings about discovery, a more appropriate response would

---

[11] Alba eventually received a copy of the executive session minutes sometime after the June 30, 2009 hearing but before he submitted his memorandum in support of his appeal to the commissioner.

- 14 -

have been to place his objection on the record and continue to the best of his ability with the presentation of evidence. In the event that Alba had participated in the proceedings before the committee and still believed that he needed additional information, he had the opportunity for a de novo hearing before the commissioner. See Slattery v. School Committee of Cranston, 116 R.I. 252, 262, 354 A.2d 741, 746 (1976) (one who appeals to the commissioner is entitled to "a de novo hearing" and not "merely a review of [the] school committee action"). At that stage, he could have availed himself of the commissioner's broad powers to subpoena documents.[12] Alba elected to forgo the hearing before the commissioner in favor of relying upon a stipulated set of facts.

While we acknowledge that Alba's request for the minutes was not unreasonable and we understand that an administrator may have valid concerns about his or her employment being discussed in open session, we nonetheless cannot say that an administrator who makes an earnest effort to utilize the procedures available will be deprived of meaningful process if he or she is not also afforded a right to prehearing discovery. Accordingly, we are constrained to conclude that in the instant case, any lack of meaningful process was the result of Alba's refusal to participate, rather than the actions of the committee.

**E**

**Letter of Nonrenewal**

Alba additionally questions the chairman's authority to author the May 8, 2009 letter which informed him that the committee had voted to nonrenew his contract. He does not challenge the validity of the committee's reasons. Instead, Alba claims that the chairman

---

[12] Pursuant to G.L. 1956 § 16-39-8, the commissioner has the power to issue subpoenas to compel the production of documents for any hearing conducted within the Department of Elementary and Secondary Education. "Subpoenas shall * * * be issued by the commissioner or hearing officer at the request of any party participating in any hearing." Id.

exceeded his authority by unilaterally selecting a reason for nonrenewal which was not agreed upon by the full committee as "the reason" for nonrenewal.

We cannot agree with the proposition that the chairman strayed beyond the bounds of his authority by distilling the committee's lengthy and varied discussions into a summary of its reasons. In this particular context, the Legislature has explicitly called for concision: Section 16-12.1-3 requires the committee to "provide the affected administrator with: (1) a concise, clear, written statement, privately communicated, of the bases or reasons for the * * * nonrenewal, and (2) notification of the right of the administrator to a prompt hearing * * *." (Emphasis added.) The May 8, 2009 letter complied with all of these statutory requirements and the chairman was clearly empowered to author that letter since he is endowed with the statutory authority to "sign any orders and official papers" on behalf of the committee. See § 16-2-6. As a practical matter, the chairman could not reasonably be expected to recount at length the substance of the committee's three discussions. Some synthesis and summarization was necessary. To the extent Alba is suggesting that he was entitled, in advance of the hearing, to a full account of the committee's discussions, this suggestion essentially amounts to another iteration of the discovery argument which we have already considered in our foregoing discussion.

## IV

### Conclusion

For the reasons stated in this opinion, we affirm the decision of the Board of Regents. The record shall be remanded to the Board of Education[13] with our decision endorsed thereon.

---

[13] After the Board of Regents issued its decision in this case, the Legislature merged the Board of Regents into the "Board of Education." See P.L. 2012, ch. 241, art. 4, § 3.


**TITLE OF CASE:**   David J. Alba v. Cranston School Committee.

**CASE NO:**   No. 2012-66 M.P.

**COURT:**   Supreme Court

**DATE OPINION FILED:**   May 16, 2014

**JUSTICES:**   Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**   Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**   Board of Regents for Elementary and Secondary Education

**JUDGE FROM LOWER COURT:**

N/A

**ATTORNEYS ON APPEAL:**

For Petitioner:  Vicki J. Bejma, Esq.

For Respondent:  Michael J. Polak, Esq.